IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK J. MAHONEY,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES CAPITOL POLICE BOARD, in its Official Capacity; KAREN H. GIBSON, in her Official Capacity as U.S. Senate Sergeant at Arms and Doorkeeper and Chair, Capitol Police Board; WILLIAM J. WALKER, in his Official Capacity as U.S. House of Representatives Sergeant at Arms and Member, Capitol Police Board; J. BRETT BLANTON, in his Official Capacity as Architect of the Capitol and Member, Capitol Police Board; and J. THOMAS MANGER, in his Official Capacity as Chief of Police, Capitol Police,<br><br>*Defendants*. | Civil Action No. _____ |

Party Information:

Reverend Patrick J. Mahoney
4019 Duke of Gloucester Street Fredericksburg, VA 22407
Plaintiff

United States Capitol Police Board
Office of Professional Responsibility 119 D. Street, NE
Washington, D.C. 20510
Defendant

Karen H. Gibson
United States Capitol Police Board U.S. Capitol
Room S-151
Washington, D.C. 20510
Defendant (in Official Capacity)

William J. Walker
United States Capitol Police Board U.S. Capitol
Room S-124

1

Washington, D.C. 20510
Defendant (in Official Capacity)

J. Brett Blanton
United States Capitol Police Board U.S. Capitol
Washington, D.C. 20510
Defendant (in Official Capacity)

J. Thomas Manger
United States Capitol Police Board 119 D Street, NE
Washington, DC 20510
Defendant (in Official Capacity)

## **PLAINTIFF'S VERIFIED COMPLAINT**

Plaintiff, Reverend Patrick J. Mahoney ("Rev. Mahoney"), complaining against the above-named Defendants, hereby alleges as follows:

## **INTRODUCTION**

1. Rev. Mahoney files this civil action seeking declaratory relief, injunctive relief, and attorney's fees against the above-named Defendants (collectively, the "Board") to vindicate his rights under the United States Constitution.

2. Rev. Mahoney is an ordained Presbyterian Minister who seeks to exercise his constitutional right to conduct a prayer vigil on the Capitol Grounds on Good Friday of this year—April 15, 2022 ("Good Friday"). Specifically, Rev. Mahoney seeks to conduct a prayer vigil on the West Front Lawn of the Capitol Grounds. The West Front Lawn, like the rest of the Capitol Grounds, is a traditional public forum.

3. The Board has devised and operates a permitting regime under which persons seeking to conduct demonstration activity on the Capitol Grounds in groups of twenty or more people must first obtain a permit.

2

4. In response to the events of January 6, 2021, the Board closed most, if not all, of the Capitol Grounds to demonstration activity, including the West Front Lawn. On September 2, 2021, the Board re-opened the West Front Lawn to demonstration activity, but only in groups of fewer than twenty people.

5. Rev. Mahoney applied for a permit to hold his proposed Good Friday prayer vigil, which he projected would attract twenty-five people, on the West Front Lawn, but the Board denied his application. The Board's permit denial was unconstitutional as applied; prohibiting Rev. Mahoney from engaging in expressive activity in a group of twenty-five people on the West Front Lawn is not narrowly tailored to any significant governmental interest.

6. Although the West Front Lawn was putatively "closed" to expressive activity prior to September 2, 2021, the Board allowed at least two other large events, involving more than twenty people, to go forward there. The Board claims that it allowed these other events to go forward because they were requested Members of Congress, but, even assuming this claim is true by allowing these other events to proceed while denying Rev. Mahoney the same opportunity, the Board has also unlawfully discriminated against Rev. Mahoney.

7. The Board's action in denying Rev. Mahoney a permit to hold his proposed Good Friday vigil violates his rights to free speech, association and assembly, and equal protection.

8. Speech in traditional public fora like the Capitol Grounds is sacred in our nation's history. Accordingly, Rev. Mahoney respectfully seeks this Court's intervention to allow him to exercise his rights on the Capitol Grounds on Good Friday.

## JURISDICTION AND VENUE

9. This action arises under the First, Fourteenth, and Fifth Amendments to the United States Constitution and 28 U.S.C. §§ 2201 and 2202. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343.

10. Rev. Mahoney sought a permit from the Board to conduct the aforementioned prayer vigil on the West Front Lawn of the Capitol Grounds, which the Board unjustifiably failed to grant. The subject matter of this dispute is thus located within the District of Columbia, and venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391.

## PARTIES

11. Rev. Mahoney is a resident of the State of Virginia, and an individual who chooses to exercise his First Amendment rights throughout this nation and within the District of Columbia. Rev. Mahoney is an ordained Presbyterian Minister. Rev. Mahoney firmly believes that he has been commissioned by Jesus Christ to spread the good news of the gospel, and to speak out in support of human rights and justice, including through prayer.

12. Defendants have control and authority over the policies, practices, and acts complained of in this Complaint and, specifically, the adoption of the Board's permitting scheme and other regulations pertaining to demonstration activity on the Capitol Grounds, decisions to grant or fail to grant a permit thereunder, and decisions to "close" or "open" the Capitol Grounds to demonstration activity.

13. The United States Capitol Police Board (the "Board") is the oversight body of the United States Capitol Police. The Board oversees and supports the United States Capitol Police in its mission and helps to advance coordination between the United States Capitol Police and the

Sergeant at Arms of the House of Representatives and the Sergeant at Arms and Doorkeeper of the Senate, in their law enforcement capacities, and the Congress.

14. Further, the Board has jurisdiction over the Capitol Grounds, and the Board adopted the permitting scheme at issue here and other regulations pertaining to demonstration activity on the Capitol Grounds, makes decisions to grant or fail to grant a permit thereunder, and makes decisions to "close" or "open" the Capitol Grounds to demonstration activity.

15. The Sergeant of Arms of the Senate, Karen H. Gibson, is sued in her Official Capacity as the Sergeant at Arms and Doorkeeper of the United States Senate and in her Official Capacity as the Chair of the Board.

16. The Sergeant of Arms of the House of Representatives, William J. Walker, is sued in his Official Capacity as the Sergeant at Arms of the United States House of Representatives and in his Official Capacity as a Member of the Board.

17. The Architect of the Capitol, J. Brett Blanton, is sued in his Official Capacity as the Architect of the Capitol and in his Official Capacity as a Member of the Board.

18. The Chief of the Capitol Police, J. Thomas Manger, is sued in his Official Capacity as the Chief of the Capitol Police and in his Official Capacity as Ex-Officio Member of the Board.

## STATEMENT OF FACTS

**THE APPLICABLE REGULATIONS**

19. "The United States Capitol Grounds extend from Union Station in the North to Virginia Avenue in the South, and from Second Street Northeast to Third Streets North- and Southwest." *Lederman v. United States*, 291 F.3d 36, 39 (D.C. Cir. 2002).

20. The Board is charged with regulating "movement of all vehicular and other traffic . . . within the . . . Capitol Grounds." 2 U.S.C. § 1969(a) (formerly 40 U.S.C. § 212b(a)). Pursuant

to its statutory authority under § 1969(a), the Board promulgated the TRAFFIC REGULATIONS FOR THE UNITED STATES CAPITOL GROUNDS, as amended February 17, 2019 (the "Traffic Regulations"). A true and correct copy of the relevant portions of the Traffic Regulations, which can be found on the United States Capitol Police web site, at https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/wysiwyg_uploaded/US%20Capitol%20Grounds%20Traffic%20Regulations_Amended%20February%202019_0.pdf, last visited March 18, 2022, is attached hereto as Exhibit A.

21.     The Traffic Regulations regulate, among other things, "Demonstrations and Special Events" on the Capitol Grounds. (Traffic Regulations § 12.) Pursuant to the Traffic Regulations, "[d]emonstration activity is allowed [only] in designated areas as indicated on the 'United States Capitol Grounds Demonstration Area Map'" (the "Demonstration Area Map"). (*Id.* § 12.2.10 and Appx. G.) "Demonstration activity" is defined as "any protest, rally, march, vigil, gathering, assembly, projecting of images or similar conduct engaged in for the purpose of expressing political, social, religious or other similar ideas, views or concerns protected by the First Amendment of the United States Constitution." (Traffic Regulations § 12.1.10.)

22.     The Traffic Regulations and the Demonstration Area Map designate certain areas of the Capitol Grounds as "No Demonstration Permitted" areas—*i.e.*, areas in which all demonstration activity is prohibited, no matter how large or small the group that wishes to perform demonstration activity. (*Id.* § 12.2.10 and Appx. G.) These areas include, but are not limited to, an approximately 200-250-foot buffer zone on all sides of the Capitol building itself. (*Id.* § 12.2.10 and Appx. G.) The Traffic Regulations and Demonstration Area Map designate other areas of the Capitol grounds as "Demonstration Permit Area[s]"—*i.e.*, areas in which demonstration activity is allowed, subject to the permitting requirements set forth in more detail below.

23. A copy of the Demonstration Area Map follows:



(*Id.* Appx. G). The areas in red are the areas designated as "No Demonstration Permitted" areas. No demonstration activity may occur in these areas, even if the demonstration activity is being undertaken by a single person. The areas in green are the areas designated "Demonstration Permit Area[s]." Traditionally, demonstration activity has been allowed in these areas for (a) individuals and groups of up to nineteen people without a permit and (b) groups of twenty people or more with a permit.

24. The West Front Lawn is Area 1 on the Demonstration Areas Map. The city block including Areas 1, 8, 9, 10, and 11 are collectively referred to as "Capitol Square."

25. The Traffic Regulations also provide that "[n]o person or group of any size may engage in demonstration activity on the steps of the United States Capitol, on the steps of any building on Capitol Grounds or in any area otherwise closed or restricted for official use." (*Id.* §

12.2.20.) The areas that may be "closed" or "restricted for official use" are broader than the areas designated "No Demonstration Permitted" on the Demonstration Area Map. In other words, the areas designated "No Demonstration Permitted" on the Demonstration Area Map (*i.e.*, the areas in red) are permanently closed (or, at least, have been closed since December 5, 2012, the effective date of the Demonstration Area Map), while additional areas may be "closed" or "restricted for official use" on a temporary basis.

26. The Board promulgated the Traffic Regulations and, accordingly, the Board determined which areas on the Demonstration Area Map were designated "No Demonstration Permitted" and which were designated "Demonstration Permit Area[s]." Further, the Board determines which areas of the Capitol Grounds should be "closed" or "restricted for official use" on a temporary basis.

27. The Traffic Regulations require certain groups of people visiting the Capitol Grounds to obtain a permit. Specifically, groups of twenty people or more who wish to engage in "demonstration activity" are required to obtain a permit to do so. (*Id.* § 12.4.10.) Permit applications must be submitted in writing to the Board at least ten business days prior to the proposed demonstration activity and must set forth certain information about the proposed demonstration activity (such as the requested area; the date, time, and duration of the demonstration activity; and the estimated number of participants, *etc.*). (*Id.* § 12.4.20.) Groups of fewer than twenty people are not required to obtain a permit to engage in demonstration activity. (*Id.* § 12.3.10.)

28. Under the Traffic Regulations, there is no requirement that the Board issue a permit on the same terms—or at the same location—as sought in the permit application. (*Id.*)

29. The Traffic Regulations themselves do not set forth any criminal punishment attendant to a violation of its provisions. By statute, however, the United States Capitol Police are authorized to enforce federal law and the law of the District of Columbia on the Capitol Grounds. *See* 2 U.S.C. § 1967(a)(4).

30. District of Columbia Code § 22-1307 provides, among other things, that "[i]t is unlawful for a person, alone or in concert with others . . . [t]o crowd, obstruct, or incommode . . . [t]he passage through or within any park [] and [t]o continue or resume the crowding, obstructing, or incommoding after being instructed by a law enforcement officer to cease the crowding, obstructing, or incommoding." D.C. Code § 22-1307(a)(1)(D), (2). That statute also provides that "[i]t is unlawful for a person, alone or in concert with others, to engage in a demonstration in an area where it is otherwise unlawful to demonstrate and to continue or resume engaging in a demonstration after being instructed by a law enforcement officer to cease engaging in a demonstration." D.C. Code § 22-1307(b)(1). For purposes of this latter provision, demonstration means "marching, congregating, standing, sitting, lying down, parading, demonstrating, or patrolling by one or more persons, with or without signs, for the purpose of persuading one or more individuals, or the public, or to protest some action, attitude, or belief." *Id.*

31. Violation of D.C. Code § 22-1307 is a misdemeanor, subject to a fine of $500 and / or up to 90 days' imprisonment. *Id.*; *see also* D.C. Code § 22-3571.01

**THE CLOSURE AND PARTIAL REOPENING OF THE CAPITOL GROUNDS**

32. In response to the events of January 6, 2021, the National Guard was mobilized and fences were erected around numerous federal properties, including most, if not all, of the Capitol Grounds.

33. The Capitol Grounds were surrounded by two fences—an outer fence and an inner fence—and the Board closed the areas surrounded by the fences to pedestrian traffic and demonstration activity.

34. In late March 2021, the outer fence was removed, and the Board opened Areas 3, 5, 6, 12, 15, 16, 17, 18, and 23 on the Demonstration Area Map to pedestrian traffic, demonstration activity in groups of nineteen people or fewer, and permitted demonstrations in groups of twenty or more people, with the caveat that demonstration activity was not allowed in groups of over fifty people. At that time, Areas 1, 2, 4, 7, 8, 9, 10, 11, 13, 14, 19, 20, 21, and 22 were still closed to pedestrian traffic and demonstration activity.

35. In early July 2021, the inner fence was removed. At that time, however, the Board did not open any additional areas to demonstration activity.

36. After the removal of the inner fence in July 2021, and despite the fact the Board did not reopen any additional areas, it allowed certain demonstration activities—but not others—to occur in areas that were putatively closed.

37. The Board issued a permit allowing the American Conservative Union ("ACU") to hold a rally, which was projected to attract 300 participants, on the West Front Lawn on July 27, 2021, for the purpose of seeking action by the Biden Administration against the oppressive communist dictatorship in Cuba. That event went forward on the West Front Lawn on the morning of July 27, 2021, as permitted. The event was attended by approximately 300 people.

38. In addition, the Board issued a permit allowing another event to go forward on the West Front Lawn on the afternoon of July 27, 2021.

39. Further, after Congress adjourned for its August 2021 recess, the Board allowed House Representative Cori Bush to hold a demonstration—without requiring her to obtain a

permit—on the Eastern steps in front of the House of Representatives from approximately June 30 – August 3, 2021, in an effort to convince the Biden administration to issue an executive order continuing the residential eviction moratorium first implemented in the wake of COVID-19. The Eastern steps in front of the House of Representatives are in an area designated "No Demonstration Permitted" on the Demonstration Area Map. Despite this fact, the Board allowed the demonstration to occur. This demonstration was attended by scores of people during both day and night.

40. The Board's stated justification for allowing these three events to go forward is that they were sponsored / organized by a member of Congress. According to the Board, events sponsored or organized by Members of Congress are not subject to the rules regarding demonstrations on Capital Grounds due to the unique nature of Members' constitutional duties.

41. On August 31, 2021, Rev. Mahoney filed a separate lawsuit against the Board arising out of its denial of a permit application, which he submitted in July 2021, for a proposed prayer vigil on September 11, 2021. The Board was made aware of the existence of that separate lawsuit no later than September 1, 2021.

42. On September 2, 2021, the day after being made aware of the existence of Rev. Mahoney's separate lawsuit, the Board opened Areas 2, 4, 7, 13, 14, 19, 20, 21, and 23 to demonstration activity in groups of nineteen people or fewer and permitted demonstrations in groups of twenty people or more, and it removed all limitations on group size in all areas on the Capitol Grounds. In addition, the Board opened Capitol Square (Areas 1, 8, 9, 10, and 11) to demonstration activity in groups of nineteen people or fewer.

43. Rev. Mahoney does not have access to the inner workings of the Board or its intent and motivation in taking the action it did on September 2, 2021. On information and belief, the

Board opened these areas in response to Rev. Mahoney's lawsuit and in an effort to cure the constitutional infirmities in the Traffic Regulations to avoid a negative ruling in that separate litigation. Rev. Mahoney bases this allegation on the close temporal proximity between the Board being served with his separate lawsuit and the Board's action, which the Board took the very next day.

44. As of the date of the filing of this lawsuit, Capitol Square is still putatively closed to demonstration activity in groups of twenty people or more.

**REV. MAHONEY IS DENIED A PERMIT TO HOLD A GOOD FRIDAY PRAYER VIGIL**

45. Rev. Mahoney is a peaceful man of God. He feels called by God to hold a prayer vigil on Good Friday on the West Front Lawn, in the shadow of the Capitol Building, where he has held similar prayer vigils in years past. During this prayer vigil, Rev. Mahoney wants to ask God to pray for peace, healing, and unity for our Nation. Rev. Mahoney believes that his proposed Good Friday prayer vigil will attract twenty-five people. The proposed prayer vigil will not cause a threat to security of the Capitol Building, the Capitol Grounds, any member of Congress, or anything else in which the Board has a legitimate interest.

46. On January 31, 2022, Rev. Mahoney applied to the Board for a permit to hold his proposed Good Friday prayer vigil.

47. Rev. Mahoney is not a member of Congress, nor, to his knowledge, did any members of Congress (or their staff) contact the Board to advocate that he be permitted to hold his prayer vigil.

48. On February 3, 2022, the Board informed Rev. Mahoney that his permit application could not be "process[ed]" because the West Front Lawn was "restricted . . . to groups of twenty or more." Based on this justification, the Board did not issue Rev. Mahoney a permit.

49. Despite the Board's denial of his permit application, Rev. Mahoney continues to desire to hold his proposed Good Friday prayer vigil on the West Front Lawn. Because, however, that area is closed to demonstration activity involving twenty people or more, he is prohibited from doing so. Rev. Mahoney will not hold his proposed Good Friday prayer vigil if he is not given a permit to do so.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of Rev. Mahoney's Constitutional Rights to Freedom of Speech as guaranteed by the First Amendment

50. Rev. Mahoney hereby incorporates by reference all other paragraphs of this Complaint as though fully set forth herein.

51. The speech and prayer that Rev. Mahoney intends to engage in at his proposed Good Friday prayer vigil is protected by the First Amendment.

52. The entire Capitol Grounds, including but not limited to the West Front Lawn, are a traditional public forum for free speech. Indeed, the West Front Lawn is a central, critical location for free speech expression on the Capitol Grounds. This location has a long history of hosting free speech activities.

53. The Traffic Regulations' permitting scheme, and, specifically, the Board's current temporary closures and refusal to issue a permit for Rev. Mahoney to hold his proposed Good Friday prayer vigil on the West Front Lawn, is invalid as applied to Rev. Mahoney's Good Friday permit application.

54. The Traffic Regulations' permitting scheme, and, specifically, the Board's current temporary closures and refusal to issue a permit for Rev. Mahoney to hold his proposed Good Friday prayer vigil on the West Front Lawn, is not narrowly tailored as applied to serve a significant governmental interest.

55. In addition, the Board has impermissibly discriminated against Rev. Mahoney on the basis of his identity—*i.e.*, as a non-Member of Congress.  The Board claims that it exempts Members of Congress from the Traffic Regulations, but speech-related discrimination on the basis of Congressional Membership violates the First Amendment, particularly where, as here, the Board cannot articulate a sufficient governmental interest or a sufficient relationship between its means and that end.  Granting members of Congress (or their staff) preferential speech rights on the Capitol Grounds constitutes impermissible discrimination on the basis of speaker identity, which is a subset of discrimination based on content.

56. Unless this Court intervenes, the Board will continue to enforce its unconstitutional permitting regime and discrimination in violation of Rev. Mahoney's constitutional rights.

57. Rev. Mahoney has no plain, adequate, or complete remedy at law to address these violations of his constitutional rights as set forth herein, and injunctive and declaratory relief are Rev. Mahoney's only means of securing complete and adequate relief. No other remedy would offer Rev. Mahoney substantial and complete protection from continuation of the Board's unconstitutional and unlawful acts, policies, and conduct.  The chilling of these rights is an absolute certainty unless and until this Court grants the relief requested herein. Under these circumstances, remedies at law are entirely inadequate for the Board's ongoing violations.

58. Rev. Mahoney is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining the Board from violating his constitutional rights.

59. Rev. Mahoney found it necessary to engage the services of counsel to vindicate his rights under the law.  Rev. Mahoney is therefore entitled to an award of attorneys' fees and costs pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION
### Violation of Rev. Mahoney's Constitutional Rights to
### Freedom of Association and Assembly as guaranteed by the First Amendment

60. Rev. Mahoney hereby incorporates by reference all other paragraphs of this Complaint as though fully set forth herein.

61. The acts and practices of the Board as alleged herein are unconstitutional as applied to Rev. Mahoney's proposed Good Friday prayer vigil.

62. Rev. Mahoney intended to peacefully assembly and exercise his constitutional right to association at a traditional public forum during his planned prayer vigil on the West Front Lawn. The Board's acts and practices prevented and are preventing him from doing so.

63. The Board's acts and practices interfere with Rev. Mahoney's rights to assemble and associate, and the Board should be enjoined from enforcing, effecting, or otherwise implementing the acts and practices complained of herein.

64. Rev. Mahoney has no adequate remedy at law, has suffered, and will suffer serious and irreparable harm to his constitutional rights unless the Board is enjoined.

65. Rev. Mahoney is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining the Board from violating Rev. Mahoney's constitutional rights.

66. Rev. Mahoney found it necessary to engage the services of counsel to vindicate his rights under the law. Rev. Mahoney is therefore entitled to an award of attorneys' fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION
### Violation of Rev. Mahoney's Rights to Equal Protection as Guaranteed by the Fourteenth and Fifth Amendments to the United States Constitution

67. Rev. Mahoney hereby incorporates by reference all other paragraphs of this Complaint as though fully set forth herein.

68. The Board's refusal to grant Rev. Mahony a permit to hold his proposed Good Friday prayer vigil—while allowing other demonstrations in the same and similar areas—constitutes a violation of Rev. Mahoney's rights to equal protection of the law as guaranteed by the Fourteenth and Fifth Amendments.

69. The Board has impermissibly discriminated against Rev. Mahoney on the basis of his identity—*i.e.*, as a non-Member of Congress. The Board claims that it exempts Members of Congress from the Traffic Regulations, but speech-related discrimination on the basis of Congressional Membership violates the Fourteenth and Fifth Amendments, particularly where, as here, the Board cannot articulate a sufficient governmental interest or a sufficient relationship between its means and that end. Granting members of Congress (or their staff) preferential speech rights on the Capitol Grounds constitutes impermissible discrimination on the basis of speaker identity, which is a subset of discrimination based on content.

70. Rev. Mahoney has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless the Board is enjoined.

71. Rev. Mahoney is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining the Board from violating Rev. Mahoney's constitutional rights.

72. Rev. Mahoney found it necessary to engage the services of counsel to vindicate his rights under the law. Rev. Mahoney is therefore entitled to an award of attorneys' fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988

**PRAYER FOR RELIEF**

WHEREFORE, Rev. Mahoney prays this Honorable Court grant the following judgment in Rev. Mahoney's favor and award him the following relief:

1. Declaratory relief in the form of an order and declaratory judgment holding and declaring that the Board's failure to issue a permit to Rev. Mahoney to conduct his proposed Good Friday prayer vigil violates his rights under the First, Fourteenth, and Fifth Amendments to the United States Constitution;

2. Injunctive relief in the form of a temporary, preliminary, and permanent injunction prohibiting the Board, its agents, employees, and all persons acting in concert with them from failing to issue a permit Rev. Mahoney to conduct his proposed Good Friday prayer vigil on the West Front Lawn and to prohibit them from interfering with such activity;

3. Injunctive relief in the form of a temporary, preliminary and permanent injunction preventing the Board, its officers, agents, employees, successors in office, and all persons acting in concert with them to be restrained and enjoined from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any unreasonable prohibition on Rev. Mahoney's engagement in First Amendment protected activities at said prayer vigil;

4. That the Court issue the requested injunctive relief without a condition of bond or surety or other security being required of Rev. Mahoney;

5. That the Court award of Rev. Mahoney's reasonable costs and attorneys' fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988;

6. That the Court retain jurisdiction of this matter for the purposes of enforcing the Court order(s);

7. That the Court grant Rev. Mahoney such other relief as the Court deems necessary and proper.

Dated: March 18, 2022　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　/s Harmeet K. Dhillon
　　　　　　　　　　　　　　　　　　　　　　　Harmeet K. Dhillon

(D.C. Bar ID: CA00078)
Mark P. Meuser
(D.C. Bar ID: CA00081)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

Joshua Wallace Dixon*
CENTER FOR AMERICAN LIBERTY
5100 Buckeystown Pike, Suite 250
Frederick, MD 21704
(703) 687-6200

*Counsel for Plaintiff Patrick J. Mahoney*

*Pro Hac Vice Application Forthcoming

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK J. MAHONEY,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES CAPITOL POLICE BOARD, IN ITS OFFICIAL CAPACITY; KAREN H. GIBSON, IN HER OFFICIAL CAPACITY AS U.S. SENATE SERGEANT AT ARMS AND DOORKEEPER AND CHAIR, CAPITOL POLICE BOARD; WILLIAM J. WALKER, IN HIS OFFICIAL CAPACITY AS U.S. HOUSE OF REPRESENTATIVES SERGEANT AT ARMS AND MEMBER, CAPITOL POLICE BOARD; J. BRETT BLANTON, IN HIS OFFICIAL CAPACITY AS ARCHITECT OF THE CAPITOL AND MEMBER, CAPITOL POLICE BOARD; AND J. THOMAS MANGER, IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE, CAPITOL POLICE,<br><br>*Defendants*. | Case No. _____ |

**VERIFICATION**

I, Reverend Patrick J. Mahoney, declare under penalty of perjury that the factual allegations in the foregoing **PLAINTIFF'S VERIFIED COMPLAINT** are true and correct.

Executed this 18 day of March 2022

_____
Rev. Patrick J. Mahoney